IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DIEGO CERVANTES, Individually        :
and on Behalf of the Invesco 401(k)  :
Plan and All Others Similarly        :
Situated,                            :
                                     :
        Plaintiff,                   :
                                     :
    v.                               :
                                     :
INVESCO HOLDING COMPANY              :        CIVIL ACTION NO.
(US), INC., et al.                   :        1:18-cv-02551-AT
                                     :
        Defendant.                   :

## <u>ORDER</u>

This case comes before the Court on Defendant Invesco Holding Company

(US), Inc., Invesco Ltd., Invesco Trust Company, Invesco Advisers, Inc., Invesco

Benefits Plan Committee, Suzanne Christensen, John Coleman, Washington

Dender, Peter Gallagher, David Genova, Douglas Sharp, Ben Utt, Gary Wendler,

Kevin M. Carome, Loren M. Starr, and John Does' 1–20 (collectively,

"Defendants") Motion to Dismiss the Plaintiff's Amended Complaint.  [Doc. 67.]

## I.    BACKGROUND

Plaintiff Diego Cervantes is a participant in Invesco Ltd.'s 401(k) Plan (the

"Plan"), an employee retirement plan offered to employees of Invesco and

Invesco's wholly-owned subsidiaries.  (*See* Am. Compl., Doc. 60 at 1.) The Plan is

an employee pension benefit plan under the Employee Retirement Income

Security Act of 1974, 29 U.S.C. §§ 1001–1461 (ERISA), and a defined contribution individual account plan, meaning that the Plan "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." ERISA § 3(34), 29 U.S.C. § 1002(34).  Having well over $890 million in assets and over 3,700 participants as of 2016, the Plan is one of the largest defined contribution plans in the United States. (Am. Compl., Doc 60 ¶ 24, 40, 104.)

On May 24, 2018, Plaintiff brought this putative class action against Defendants, Invesco Holding Company (US) Inc. (formerly IVZ, Inc.) ("Invesco Holding Inc."), which is the Plan Sponsor, and several of its wholly-owned subsidiaries, affiliated entities, and executives involved with the sponsorship and management of the Plan. (*See generally* Original Compl., Doc. 1.)  The gravamen of the complaint is that the Invesco Holding Inc. and its board of directors[1] (collectively, the "Plan Sponsor") and the Invesco Benefits Planning Committee ("IBPC"), all as fiduciaries of the plan, breached their fiduciary duties of prudence and loyalty by "structuring the Plan . . . to solely benefit Invesco and its affiliate entities to the detriment of Plan participants," (*Id.* ¶ 5), and by engaging in

---

[1] Plaintiff alleges that the Board of Directors of Invesco Holding Inc., which as Plan Sponsor is responsible for overseeing the Plan's appointment and designation of Plan fiduciaries and the Plan administrator, consisted of two senior Invesco executives, Kevin Carome, Senior Managing Director and General Counsel, and Loren Starr, Chief Financial Officer and Senior Managing Director, both named Defendants. (Am. Compl. ¶ 17–18.)  Given their discretionary authority, Plaintiff argues that they were also fiduciaries within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).  (*Id.* ¶ 19.)

transactions prohibited under ERISA to benefit Invesco, its affiliates, and its executives. (*Id.* ¶ 2–8.)

Plaintiff further alleges that Invesco Ltd., as the employer of the named fiduciaries under the Plan, as well as Invesco Advisers and Invesco Trust Co. (the "Investment Managers"), which are both wholly-owned Invesco subsidiaries selected by IBPC to manage a majority of the Plan's investments, are parties in interest within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14) and as such engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b). (*Id.* ¶ 20, 129–133.)

According to the terms of the Plan, as set forth in the Plan Document (Defs.' Mot. to Dismiss, Ex. 1),[2] participants may make before-tax or after-tax contributions between 1% and 75% of their annual salary, with a percentage matched by the Company. After participants make their contributions, the Plan offers participants an assortment of investment options. The success of those investments in the returns they yield, reduced by the amount of fees and expenses charged for making those investments by or on behalf of the plan participant, then determines how much income the participant will have at her or his retirement. (Am. Compl., Doc. 60 ¶ 3, 38.)

Participants had two options for investing contributions: first, they could select from a set of investment funds that were selected by the plan's investment

---

[2] The Court considers the Plan Document attached to Defendants' Motions to Dismiss as incorporated into the pleadings because the document is: (1) central to Plaintiff's claims; and (2) not in dispute. *See Horsley v. Feldt,* 304 F.3d 1125, 1135 (11th Cir.2002).

managers, or second, they could open a self-directed brokerage account with Charles Schwab & Co., Inc. (the "Schwab Account").  (*Id.* ¶ 3.)

Although Plaintiff has not alleged that he opened an account with Charles Schwab & Co., Inc., he claims that the Schwab Account was specifically structured so as to restrict participants' choices to exchange traded funds ("ETF") affiliated with Invesco, thereby disallowing investment in blue chip common stocks and ETFs offered by the three largest ETF companies, Vanguard, BlackRock, and State Street, which are direct competitors of Invesco affiliate PowerShares, the fourth largest ETF company.  (*Id.* ¶ 6–7, 53.)

Plaintiff names five groups of defendants: Invesco Holding Company (US), Inc. ("Invesco Holding Co."), Invesco Ltd. ("Invesco"), Invesco Benefits Plan Committee ("IBPC") and eight of its members (the "IBPC Defendants"), Invesco Advisers and Invesco Trust Co. (the "Investment Manager Defendants"), and "John Does 1-20" (the "Doe Defendants"), whose identities have not been determined but would purportedly include additional officers and employees of Invesco who were fiduciaries or parties in interest.  (*Id.* ¶ 14–25.)

Defendant Invesco Ltd. is an investment management company headquartered in Atlanta, Georgia, and incorporated under the laws of Bermuda. (*Id.* ¶ 14; Plan Document at 9.)  Invesco Ltd. is the ultimate parent of the wholly-owned subsidiaries Invesco Advisers, Inc. ("Invesco Advisers") and Invesco Trust Company ("Invesco Trust Co.") that Plaintiff alleges to both sponsor and manage the Plan.  (*Id.* ¶ 14–15.)

The Plan Document states that the IBPC shall be the named fiduciary of the Plan and that it shall have "exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan." (*Id.* at 36.)  Plaintiff alleges that the IBPC is "composed of senior Invesco executives who have an interest in promoting Invesco's asset business," and that because these executives' bonus performance criteria under the Invesco Executive Bonus Plan are based on factors such as assets under management, operating revenues, and net asset flow, each of the Invesco executives on the IBPC have a "strong personal incentive[] to use Plan assets" to benefit Invesco's business to the detriment of the Plan participants.  (Am. Compl., Doc. 60 ¶ 42.)[3]

Plaintiff's complaint alleges six counts covering May 25, 2012, until the date of Judgment (the "Class Period"). Count I alleges that the Plan Sponsor Defendants and IBPC Defendants breached their fiduciary duties in violation of ERISA § 404(a) and (b), 29 U.S.C. § 1104. Plaintiff alleges that these defendants violated their duties to act prudently and in the exclusive benefit of the plan participants by stacking investment options with between 55% and 68% Invesco-affiliated options, and in some categories such as high yield bond and diversified emerging markets, exclusively Invesco-affiliated options, despite the fact that these Invesco-affiliated

---

[3] Plaintiff named as Defendants eight senior Invesco executives on the IBPC who were named fiduciaries under the Plan Document: (1) Washington Dender, Head of Human Resources and Committee Chairperson; (2) Ben Utt, Managing Director of U.S. Institutional Sales and Services; (3) Gary Wendler, Head of Product Development and Investment Measurement/Risk; (4) Suzanne Christensen, Head of Enterprise Risk & Analytics; (5) Peter Gallagher, Head of U.S. Retail Sales; (6) John Coleman, Managing Director and Chief Administrative Officer; (7) Douglas Sharp, Head of EMEA Retail Group (removed in October 2015); and (8) David Genova, Global Investments Director.  (Am. Compl., Doc. 60 ¶ 21–22); (Doc. 67-4 at 36.)

options performed worse than or charged higher fees than readily available alternatives. (*Id.* ¶ 110–119.) For example, in 2017, Invesco offered twenty-five total investment options. (*Id.* ¶ 46.) Of those twenty-five options, fifteen were Invesco-affiliated, and further, of the fifteen actively-managed options, only one was not Invesco-affiliated. (*Id.*)[4] Further, Plaintiff states that between 2012 and 2017, nine investment categories provided only Invesco-affiliated options: High Yield Bond, World Allocation/Allocation—30% to 50% Equity, Large Blend, Mid-Cap Growth, Small Value, Small Growth, Foreign Large Growth, Diversified Emerging Markets, and Stable Value/Money market-Taxable.  (*Id.* ¶ 47.)

Count II alleges that the Plan Sponsor Defendants breached their fiduciary duties by failing to monitor other fiduciaries of the Plan who inadequately performed their fiduciary duties and by failing to have a process by which Plan Investments would be monitored and evaluated. (*Id.* ¶ 121–126.)

Count III alleges that the Plan Sponsor Defendants and IBPC engaged in prohibited transactions with Investment Manager Defendants, who Plaintiff alleges are parties in interest to the Plan. As a result, Plaintiff alleges, these Defendants have cost Plaintiff and class members "millions of dollars in the form

---

[4] Defendants have created some confusion about how many Invesco-affiliated options existed by relying on their own reckoning, supported not by allegations in the complaint, but by an attachment to their Motion to Dismiss. (MTD App. A). Based on this attachment, Defendants state that there were twenty-five affiliated options *during the Class Period*. This "twenty-five" number repeated throughout the Motion to Dismiss is not the same as the twenty-five total investment options Plaintiff alleges existed in the single year of 2017 (of which fifteen were Invesco-affiliated). If Defendants have correctly outlined the available Invesco-affiliated options, it would greatly assist the Court for Plaintiff in a subsequent Amended Complaint to state the cumulative total number of Invesco-affiliated options which were available in the years Plaintiff focuses on.

of higher fees and lower returns on their investments." (Am. Compl. ¶ 137.) For example, Plaintiff alleges that the fiduciary defendants "steered participants invested in the Invesco Emerging Market Equity Trust, with an operating expense of 0.21%, into the Invesco Developing Markets mutual fund with an operating expense of 1.01%," even though the latter fund "had a track record of underperformance." (*Id.* ¶ 134.) Plaintiff also alleges that Plan Sponsors and IBPC paid unreasonably high management fees to the parties in interest. (*Id.* ¶ 135–137.)

Count IV alleges that Plan Sponsor Defendants and IBPC engaged in prohibited transactions because the IBPC executives received financial benefits through the Invesco Executive Incentive Bonus Plan for increasing assets under management, which constituted a "strong personal incentive" for IBPC executives to steer participants' contributions towards Invesco-affiliated investments. (Am. Compl. ¶ 42, 140–146.) As a result, Plaintiff alleges, "[b]y December 31, 2016, $569,797,686 or 81% of investments by Plan participants were in Invesco-affiliated funds." (Id. ¶ 50.)

Count V alleges that Plan Sponsor Defendants, IBPC, as well as the Investment Manager Defendants knowingly participated in each of the fiduciary breaches, and therefore are liable for each other's breaches in addition to their own under ERISA § 405(a), 29 U.S.C § 1105(a). Plaintiff has also alleged that the Investment Manager Defendants Invesco Advisers and Invesco Trust Co. are parties in interest within the meaning of ERISA § 3(14), 29 U.S.C § 1002(14) (*id.* ¶ 23, 131), but Plaintiff also argues here that the Investment Manager Defendants

owed a *fiduciary* duty to the Plan and its Participants. (*Id.* ¶ 145, 150 (stating "[t]he Invesco Plan Sponsor Defendants, the Benefits Committee Defendants, and the Investment Manager Defendants were all fiduciaries of the Plan within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.").) Plaintiff alleges that Investment Managers are, at a minimum, parties in interest, "even if they are not fiduciaries." (*Id.* ¶ 153.)

Finally, Count VI alleges that Invesco Ltd. and the Investment Manager Defendants, even as non-fiduciaries, are still subject to liability under ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), because they "would have known" that the other Defendants were fiduciaries and that knowledge possessed by senior executives appointed by Invesco would be imputed to Invesco. (Am. Compl. ¶ 154.) Therefore, those defendants "would have been aware" of the breaches and prohibited transactions, including the charging of excessive fees, conflicts of interests of IBPC Defendants and Plan Sponsor Defendants, the selection of investments intended only to increase assets under management and Invesco profits, and the investment of Plan assets in the Invesco Short-Term Investment Fund ("ISTIF"). (*Id.* ¶ 155.) The ISTIF was the subject of a 2016 settlement between the U.S. Department of Labor and Invesco Trust Co. for approximately $10.2 million, according to Plaintiff's Complaint. (*Id.* ¶ 96.) Invesco Trust Co. allegedly inflated the ISTIF's net asset value by "retaining a portion of the ISTIF's income that should have been distributed to investors" and by "entering into a series of

support agreements with an affiliate of Invesco to provide contingent financial support . . . ." (*Id.* ¶ 95.)

## II.   LEGAL STANDARD

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true.  *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.   DISCUSSION

Defendants move to dismiss all claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). They further claim that Counts III and IV (the "prohibited transactions claims") are barred by the statute of limitations, 29 US Code § 1113,

or under exemptions in 29 U.S.C. § 1108(b)(2), (c)(2), and that Counts II, V, and VI (the "monitoring and cofiduciary liability claims"), as derivative claims, must also be dismissed. For the reasons set forth below, the motion is **GRANTED**, but such dismissal is with leave to amend.

### A.   Breach of Fiduciary Duty and Failure to Monitor (Counts I, II, V, and VI)

The Employee Retirement Income Security Act of 1974 was "designed to promote the interests of employees and their beneficiaries in employee benefit plans" and imposes the twin duties of loyalty and prudence on plan fiduciaries to promote these interests. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). These duties are well-recognized as being "the highest known to the law," requiring that a fiduciary discharge his responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use, and, "with respect to a plan[,] solely in the interest of the participants and beneficiaries." *Chao v. Hall Holding Co.*, 285 F.3d 415, 426 (6th Cir. 2002) (quoting 29 U.S.C. § 1104(a)(1) and *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996); *see also Tibble v. Edison Intern.*, 135 S. Ct. 1823, 1827 (2015).

To determine "the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Tibble*, 135 S. Ct. at 1828; *see also Firestone Tire and Rubber Co. v. Burch*, 489 U.S. 101, 110 (recognizing that ERISA "abounds with the language and terminology of trust law."). The "content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts." *Fifth*

*Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (quoting 29 U.S.C. § 1104(a)(1)). As such, "the appropriate inquiry will necessarily be context specific." *Id.* In stating a claim for breach of fiduciary duty under ERISA, the plaintiff bears the burden of making a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and caused a loss to the plan. *See Roth v. Sawyer-Cleator Lumber Co.*, F.3d 915, 917 (8th Cir. 1994); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018); *Braden*, 588 F.3d at 594.

As a general matter, the duty of loyalty under the common law of trusts prohibits fiduciaries from "engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests." *Patterson v. The Capital Grp. Cos., Inc.*, No. 17-CV-4399, 2018 WL 748104, at *4 (C.D. Cal. Jan. 23, 2018) (quoting Restatement (Third) of Trusts). Although self-dealing is prohibited under common law, ERISA makes a departure from the common law in that fiduciaries may wear different hats. *See Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). "ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Id.*

An ERISA fiduciary is held to the objective "prudent person" standard under 29 U.S.C. § 1104(a)(1)(B), which "focuses on the process of the fiduciary's conduct preceding the challenged decision." *Pension Ben. Guar. Corp. ex. Rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730; *see also Braden*, 588 F.3d at 595 (emphasizing that the Court "focus[es]  on

the process by which [the fiduciary] makes its decisions rather than the results of those decisions" in evaluating whether the fiduciary acted prudently).

An ERISA plaintiff's burden is not simple, and courts evaluating ERISA claims at this stage "must be cognizant of the practical context of ERISA litigation." *Braden*, 588 F.3d at 598.

> No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information. If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer. These considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief.

*Id.* The levels of knowledge required, and accessible, by plaintiffs bringing breach of fiduciary claims, therefore, are not equal.  Due to the disclosure and reporting requirements carefully set forth in ERISA, plaintiffs do have extensive access to information on investment funds offered under the plan and its performance, as well as procedures prescribed by the plan and information regarding its administration and processes.  On the other hand, however, because the "methods and actual knowledge" of processes by which fiduciaries made decisions in that capacity "tend to be in the sole possession of [that fiduciary]," *Meiners*, 898 F.3d at 822 (quoting *Braden*, 588 F.3d at 598), ERISA plaintiffs are often left "to use the data about the selected funds and some circumstantial allegations about

methods to show that a prudent fiduciary in like circumstances would have acted differently.'" *Id.*

However, Defendants correctly point out that choosing poorly performing funds or generally alleging excessive fees is insufficient to state a claim. *See Meiners*, 898 F.3d at 822–24 (finding that "[a]bsent any well-pled factual allegations that [the defendants'] funds were an imprudent choice, no inference can be drawn . . . that the . . . [d]efendants retained those funds (or made them default investments) out of improper motives."). Because lawful and prudent decisions may have the same result as unlawful and imprudent decisions in this context, complaints that, when read as a whole, merely allege that fiduciary duties were breached because funds underperformed do not state a claim. *Id.*

With the exception of one fund, the Amended Complaint fails to plausibly plead underperformance.[5] For most of the challenged funds, Plaintiff provides benchmarks for some years, but not others. (Am. Compl. ¶¶ 72 (2014), 77 (2011, 2012, 2014), 78 (2016), 83 (2009, 2011, 2013), 84 (2015, 2017, 2018), 89 (2008, 2011), 90 (2015, 2016, 2018).) For some of the funds, Plaintiff pleads that the funds were ranked in the bottom percentage of the given fund's investment category but does not plead the ranking for each year in the Class Period. (E.g., Am. Compl. ¶¶

---

[5] The Court notes Defendants' objection to Plaintiff's failing to mention several other Invesco-affiliated funds in the Amended Complaint. (Defs.' Br. MTD at 10.) Plaintiff alleges that the funds which were included are "representative examples of Invesco-affiliated funds that were imprudent." (Am. Compl. ¶ 61.) However, when considering Plaintiff's omission of the other affiliated funds, together with the absence of adequate data alleged regarding the nine included funds, the Court is concerned that Plaintiff may be hiding the ball.

72 (2011, 2016), 77 (2014).)[6] The Court cannot say that this spotty pleading "provide[s] a sound basis for comparison — a meaningful benchmark." *Meiners*, 898 F.3d at 822.

Furthermore, while Plaintiff has chosen a somewhat arbitrary six-year period for calculating cumulative gains, during that same period, the annual performance of the targeted funds is mixed. *Cf. Pledger*, 240 F. Supp. 3d 1314, 1327 (N.D. Ga. 2017) (affiliated "funds drastically underperformed alternatives."). Plaintiff argues in response that the question of overperformance presents a fact issue (Pl.'s Resp. Br. at 15), but as Defendants correctly point out, "Plaintiff's own allegations make clear that the example Invesco funds in fact outperformed seventeen of Plaintiff's nineteen chosen alternatives at various points in time." (Defs.' Br. MTD at 12 (citing Am. Compl. ¶¶ 69, 74, 80, 86, 92) (emphasis omitted)).

Furthermore, while the Amended Complaint is full of references to "excessive fees," with the exception of one fund, Plaintiff does not plead anything about the fees or expense ratio of any of the funds at all. (Def.'s Br. MTD at 16.) The sole exception is the set of allegations regarding the Emerging Markets Equity Trust (EMET) and the Developing Markets Fund (GTDFX). While Plaintiff does not allege these two funds consistently underperformed, Plaintiff does allege that

---

[6] It is difficult for the Court to discern what is meant by a fund being placed in the "bottom 74% of comparable mutual funds." (Am. Compl. ¶ 72.) Plaintiff does not clarify whether this means that only 26% of comparable funds outperformed the fund, or that 74% of funds outperformed the fund.

GTDFX was underperforming at the time it was substituted for EMET. (Am. Compl. ¶ 65.) Plaintiff also alleges GTDFX had an expense ratio nearly 5 times as high as EMET. (*Id.* ¶ 64.) However, this single alleged oversight is nothing like the widespread "drastic[] underperform[ance]" alleged in *Pledger*, 240 F. Supp. 3d at 1327. The fact that Plaintiff has alleged a single instance of a questionable decision by Defendants in the last six years does not in and of itself create an inference of wrongdoing.

However, the Court does not agree with Defendants that leave to amend the complaint should be denied as futile. Plaintiff's allegations that "during the Class Period, between 55% to 68% of all Plan Investments were affiliated with Invesco," (Am. Compl. ¶ 46), and that "[b]y December 31, 2016, $569,797,686 or 81% of investments by Plan participants were in Invesco-affiliated funds" (*id.* ¶ 50) give the Court pause when it takes into consideration the allegation that "the bonus performance criteria under the Invesco Executive Incentive Bonus Plan includes assets under management, net revenue yield on assets under management, operating revenues, and net asset flows." (*Id.* ¶ 43.) These allegations are further concerning considering Plaintiff's allegations regarding the limitation of access to non-Invesco affiliated funds (*id.* ¶ 47), but the Court cannot say that Plaintiff has plausibly alleged that this state of affairs arose by conduct "tainted by failure of effort, competence, or loyalty." *Braden*, 588 F.3d at 596. Perhaps there is a "there" there, perhaps not. In light of Plaintiff's request for leave to amend, (Pl.'s Resp. Br. at 25 n.19) and the possibility that "a more carefully drafted complaint" could state

a claim, the Court must give Plaintiff the opportunity to try. *Woldeab v. Dekalb Cty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc)).

As for Counts II, V, and VI for failure to monitor, co-fiduciary liability, and non-fiduciary participation in fiduciary breach, Defendants move to dismiss these as derivative claims dependent on whether the Court finds an underlying breach of fiduciary duty. Because Plaintiff has not alleged enough at this stage to state a claim for the underlying breaches, the Court **GRANTS** Defendants' motion to dismiss counts II, V, and VI, with leave to amend.

## B.  Standing to Raise Claims Regarding the Schwab Account

In order to proceed, Plaintiff must have both Article III standing as well as a cause of action under ERISA to bring claims against the Plan on behalf of himself and the Class.[7]  Defendants move to dismiss Plaintiff's claims regarding the Schwab Account, a self-directed brokerage window offered under the Plan, because Plaintiff did not allege he had invested in that specific Plan service option and therefore was not harmed by the performance of those accounts.  (Defs.' Br. MTD at 17.)  The Court finds that although Plaintiff may not have participated in every investment option or service under the Plan, he has met the requirements of Article

---

[7] Plaintiff defines the Class as "[a]ll participants in the Invesco 401(k) Plan from May 25, 2012 to the date of Judgment (the "Class Period"). Excluded from the Class are Defendants and their families, the officers and directors of Invesco Ltd. and any of its subsidiaries, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest." (Am. Compl., Doc. 60 ¶ 103.)

III to bring his claims against the Defendants on behalf of himself. However, the Court will reserve ruling as to whether he has established standing to bring claims on behalf of the putative class members for the following reasons.

The doctrine of standing serves to "identify those disputes which are appropriately resolved through the judicial process," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and confers power on a federal court to hear only those cases that present a true "case" or "controversy" within the meaning of Article III of the U.S. Constitution.   Threshold individual standing is an "irreducible constitutional minimum" that requires a plaintiff to have suffered an "injury in fact" that is "fairly traceable to the challenged action of the defendant" and likely to be "redressed by a favorable decision."  *Id.* at 560–61.

A plaintiff who brings suit as a class representative, however, does not acquire Article III standing on the basis of the class action.  *See Brown v. Sibley*, 650 F.2d 760, 770 (5th Cir. 1981), *superseded by statute on other grounds*, *McMullen v. Wakulla Cty. Bd. of Cty. Commissioners*, 650 F. App'x 703, 705 (11th Cir. 2016). Instead, the plaintiff must first satisfy the threshold individual requirements of Article III standing, after which a plaintiff may bring causes of action based on conduct that not only caused him harm, but "which sweep more broadly than the injury he personally suffered."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009).  Even in class actions, these elements must be demonstrated by the party invoking federal jurisdiction "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan* at 560.

*See generally O'Shea v. Littleton*, 414 U.S. 488 (1974); *Sierra Club v. Morton*, 405 U.S. 727 (1972).

It is well settled that federal courts "routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit." *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008). The key, then, is not to confuse or conflate Article III's requirements for threshold individual standing with requirements set forth in Fed. R. Civ. P. 23. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998).

A plaintiff who brings suit alleging ERISA violations is not required to have invested in every plan option in order to have standing to challenge the allegedly violative conduct, so long as "the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." *Id.*; *see Braden*, 588 F.3d at 593; *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir. 1993), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011),  (finding that because the plaintiff sufficiently alleged that defendants violated their duties through a claims procedure that was applied uniformly to class members, her participation in only one of the four plans involved still sufficed for Article III standing). In other words, "once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Fallick*, 162 F.3d at 424.

Courts in this district have previously addressed an ERISA plaintiff's standing to bring suit for alleged misconduct impacting investment funds beyond their own. *See Fuller v. SunTrust Banks, Inc.*, No. 1-11-cv-784, 2012 WL 1432306, at \*8 (N.D. Ga. Mar. 20, 2012); *Johnson v. Delta Air Lines, In*c., No. 17-cv-02608 (N.D. Ga. Dec. 12, 2017) (ECF No. 53). In *Fuller*, a plan participant sued a former employer for various alleged ERISA violations. No. 1-11-cv-784, 2012 WL 1432306, at \*1. The employer moved to dismiss, arguing that the participant lacked standing to claims violations arising from one of the funds the participant challenged because she did not invest in that fund. *Id.* at \*8. The court granted the motion, holding that the participant "beyond the bare assertion that a breach of fiduciary duty harms all plan participants, has not described how the offering of a fund in which she did not invest caused her a non-speculative injury." *Id.* The court, however, recognized that "a plaintiff might be able to show that the constellation of funds in the plan is structured in such a way that plaintiff would sustain injury from selection and offering of an investment not made by plaintiff." *Id.*

In *Johnson*, the participants alleged "breaches involv[ing] particular investment options and excessive recordkeeping fees." No. 17-cv-02608, slip op. at 1 (ECF No. 53 at 1). The participants had not alleged in their complaint that they invested in certain plan funds or paid the excessive fees, and the court therefore held that they did not suffer a "concrete and particularized injury." *Id.* slip op. at 3. The court stated in a barebones decision that it "need not delve into whether Plaintiffs *could* allege they personally suffered the injuries that

purportedly affected the plan, because [p]laintiffs did not do so." *Id.* slip op. at 3 n.1.

Plaintiff here alleges that Defendants breached their fiduciary duties in several practices, including in their deliberate structuring of the Schwab Account to only offer Invesco-affiliated PowerShares ETFs, which were "substandard" (Am. Compl., Doc. 60 ¶ 59, 98), and by disallowing ETFs offered by any non-Invesco-affiliated company in order to charge excessive fees for their own benefit and to increase PowerShares's volume of ETF shares traded. (Am. Compl., Doc. 60 ¶ 97–102.)  Although Plaintiff did not allege he ever participated in the Schwab Account, he maintains that Defendants' misconduct is part and parcel with the same imprudent, self-serving course of action that has injured his retirement savings and the retirement savings of all participants.  (*Id.* ¶ 100.)

Because the Court has held that Plaintiff failed to state a claim of his own for breach of fiduciary duty, the Court is unable to reach the question of Plaintiff's standing to raise claims about the Schwab Account on behalf of the class. The Court does not want to entangle the merits of the case with the question of standing, but without having properly alleged a claim of his own, Plaintiff has no ability to bring a claim on behalf of a class as to the Schwab Account at this juncture.

As the Court is granting Plaintiff leave to amend his Complaint, the Court will briefly discuss the standing issue further. The Court does not agree with the line of cases which have held that a plaintiff's failure to use products similar to the Schwab Account in this case forecloses standing to bring claims arising from these

products on a classwide basis. *See Dorman v. Charles Schwab Corp.*, No. 17-cv-00285, 2018 WL 6803738 (N.D. Cal. Sept. 20, 2018), arbitration compelled by No. 18-15281, 2019 WL 3939644 (9th Cir. Aug. 20, 2019). In *Dorman*, the court held that the plaintiff lacked standing to bring claims related to a self-directed brokerage system in which the plaintiff did not enroll. *Id.*, 2018 WL 6803738, at *5.

The Court would not reach the same result as *Dorman*, at least at this stage of the proceeding. Plaintiff has alleged that misconduct regarding the Schwab Account arises from the same misconduct that injured his retirement savings and the retirement savings of all participants. While the Court has dismissed these counts with leave to amend, the Court cannot say as a matter of law that Plaintiff would never have standing to bring such a claim in connection with a properly alleged cause of action against Defendants. Defendants do not contend that the Schwab Account is somehow not part of the Plan. (*See* Defs.' Br. MTD at 19 n.10 (citing the Summary Plan Document).) Barring a plaintiff who may otherwise hold an ERISA claim from challenging conduct which is part and parcel with the plaintiff's claim is at odds with the Supreme Court's cases which hold ERISA's enforcement provisions "protect the entire plan." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 252 (2008) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985)). Plaintiff need not show that he has invested in every plan option in order to have standing to challenge the allegedly violative conduct, so long as "the gravamen of the plaintiff's challenge is to the general

practices which affect all of the plans." *Fallick*, 162 F.3d at 422; *see also Braden*, 588 F.3d at 593.

One final note on standing. The Court is careful not to conflate Article III's requirements for threshold individual standing with requirements set forth in Federal Rule of Civil Procedure 23. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998). However, at the outset of this case, the Court is concerned that the bulk of Plaintiff's First Amended Complaint alleges conduct related to funds in which he did not invest. He may be able to amend his complaint to both state a claim that Defendants' conduct affected him, and to allege that the conduct was part of a pattern that affected the Schwab Account.[8] However, if his allegations once again solely center on misconduct regarding a single fund (GTDFX) and the Schwab Account, which he did not utilize, it bears on his adequacy as a class representative and the typicality of his own claims.

### B.    Prohibited Transaction Claims (Counts III and IV)

Defendants move to dismiss Plaintiff's prohibited transaction claims on the grounds of statute of limitations and ERISA's reasonable compensation

---

[8] Plaintiff does not need to allege he was personally harmed by each act of accused misconduct which affected the plan. *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 157 (S.D.N.Y. 2017) ("In the case sub judice, plaintiffs do have a clear path to demonstrating defendants' misconduct without undertaking the kind of fund-by-fund analysis that was unavoidable in *Retirement Board*. Proving the "interrelated and overlapping" duty of prudence and loyalty claims that are at issue in this case . . . will require an inquiry into defendants' conduct in managing the Plan, which plaintiffs allege was uniform and not dependent on the idiosyncratic characteristics of any proprietary funds.") (citing *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 159 (2d Cir. 2014)).

exemption. While the Court declines Defendant's request to determine these issues as a matter of law on a motion to dismiss, the Court also holds that based on the particular facts of this case, Plaintiff has not sufficiently pled a prohibited transaction claim.

### 1.   Statute of Limitations

Defendants have moved to dismiss the majority of Plaintiff's prohibited transaction claims as time barred under ERISA's statute of limitations, 29 U.S.C. § 1113. Described by the Second Circuit as "[h]eld together by chewing gum and baling wire, the statute of limitations for breach of fiduciary duty actions brought under ERISA provides:"

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation,                                                      or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

*Caputo v. Pfizer, Inc.*, 267 F.3d 181, 188 (2d Cir. 2001) (quoting 29 U.S.C. § 1113).

Defendants' Motion to Dismiss centers on the three year period under 29 U.S.C. § 1113(2), as Defendants contend that "Plaintiff's receipt of account statements,

which explicitly reveal the affiliated nature of the Plan's investment options, satisfies the 'actual knowledge' requirement." (Defs.' MTD Br. at 24.)

"Courts have construed the 'actual knowledge' requirement strictly; constructive knowledge is inadequate, rather, the plaintiff must have knowledge of the facts or transaction that constituted the breach in order to trigger the statute of limitations." *Lockhart v. S. Health Plan, Inc. Plan Adm'r*, No. 4:04-CV-0006-WLS-MSH, 2012 WL 1576160, at *6 (M.D. Ga. May 4, 2012) (quoting *New Orleans Emp'rs Int'l Lonshoreman's Asscoc., AFL–CIO Pension Fund v. Mercer Inv. Consultants*, 635 F.Supp.2d 1351, 1378 (N.D. Ga. 2009)), *aff'd sub nom. Lockhart v. Blue Cross Blue Shield of Tennessee*, 503 F. App'x 926 (11th Cir. 2013). Therefore, "it is not enough that [a plaintiff] had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues." *Id.* (quoting *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987)) (internal quotations omitted).

A statute of limitations bar is "an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir.1993)). "Thus, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.'" *Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 909 (W.D. Mo. 2017) *(quoting Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011))*; see also Moreno*

*v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2016 WL 5957307, at *5 (S.D.N.Y. Oct. 13, 2016) ("Dismissal is not warranted based on Defendants' statute of limitations affirmative defense as it is not clear from the face of the Complaint or judicially noticed court filings that Plaintiffs' claims are time barred under 29 U.S.C. § 1113."); *Dorman*, No. 17-CV-00285-CW, 2018 WL 6803738, at *5 ("Defendants have not demonstrated actual knowledge that is clear from the face of the complaint and judicially noticeable documents.").

Defendants base their statute of limitations argument not on allegations in the Complaint, but rather on account statements and fee notices attached to their Motion to Dismiss. Plaintiff does not dispute the authenticity of the attachments, but disputes that these documents establish specific knowledge of an ERISA violation. (Pl.'s Resp. Br. 20 (citing *Stargel v. SunTrust Banks, Inc.*, 968 F. Supp. 2d 1215, 1232–33 (N.D. Ga. 2013), vacated on other grounds, 791 F.3d 1309 (11th Cir. 2015).)

When the Court is presented with matters outside the pleadings on a motion to dismiss, the Court ordinarily must exclude the materials or treat the motion as one for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d). Courts have crafted two exceptions to this rule. The first exception applies where the fact or document in question is judicially noticeable under Federal Rule of Evidence 201. *See, e.g.*, *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345 (N.D. Ga. 2010). The second exception applies where "the plaintiff refers to certain documents in the complaint and those documents are central to

the plaintiff's claim." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir. 1997).

Defendants argue that "[t]he Court may take judicial notice of the . . . exhibits [attached to the Motion to Dismiss], as they are either required disclosures, publicly filed documents, or documents on which Plaintiff relied in bringing this action, and therefore 'central to the complaint.'" (Defs.' Br. MTD at 6 n.5 (*citing In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1344 (N.D. Ga. 2010)). With respect to the 401(k) Plan itself, the Court agrees that Plaintiff's multiple references to the Plan and reliance on its contents provides sufficient grounds for consideration of the Plan on a motion to dismiss. (*See supra*, note 2; Am. Compl. ¶ 39; Defs.' MTD Ex. 1, Doc 67-4.).

As to the Form 5500 attachments, the Court will take judicial notice of the Department of Labor filings solely for their existence and the fact of their filing, as "there can be little question as to [their] authenticity, nor can the fact that such statements or disclosures were thus publicly filed be reasonably questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276–77 (11th Cir.1999); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1067 (N.D. Cal. 2017) (taking judicial notice of form 5500 filings) (citing *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp.*, Inc., 99 F.Supp.3d 1110, 1126 (C.D. Cal. 2015) (taking judicial notice of Form 5500 filings)). However, this gains Defendants little, as the Court will not take judicial notice of the truth of their contents or "one party's opinion of how a matter of

public record should be interpreted." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1126 (C.D. Cal. 2015) (quoting *United States v. S. California Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004) (internal quotations omitted), *In re UnumProvident Corp. Sec. Litig.*, 396 F.Supp.2d 858, 875 (E.D.Tenn.2005) ("[T]he Court is careful to note it is only taking judicial notice of the existence of these documents and the specific statements and/or allegations contained within the documents. It would be improper for the Court to rely upon these documents to determine disputed factual issues and by taking judicial notice of these documents at this time the Court in no way intends to make any determination as to the truth of any of the facts alleged or otherwise asserted in the documents themselves.").

As to the account statements and fee disclosures, the request to take judicial notice is denied. (Defs.' MTD Exs. 2–4, 12–22). Defendants have failed to lay the foundation necessary to demonstrate that the statements, which were "personally addressed to Plaintiff" (Defs.' Reply Br. at 12 n.8), or their contents, are judicially noticeable under Federal Rule of Evidence 201(b). Furthermore, Defendants fail to cite any particular allegations of the Complaint which would compel a conclusion that the exact documents in question were relied upon by the Plaintiff such that they were "central" to Plaintiff's claim. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Faced with matters outside the pleadings and no applicable exception to Rule 12(d), the Court will exclude these documents rather than convert

Defendants' motion to one for summary judgment. The Court finds consideration of this issue to be premature at this stage of the proceeding, as it would require the Court to resolve a fact dispute at the outset of the case that Defendants admit would not be dispositive of all of Plaintiff's claims, but only the prohibited transaction claims. (Defs.' Reply Br. at 12).

Looking solely to the four corners of the Complaint, the Court cannot say that "the complaint itself establishes the defense" of statute of limitations. *Wildman*, 237 F. Supp. 3d at 909 (quoting *Walker*, 650 F.3d at 1203). Defendants argue that the "essential fact" of Plaintiff's prohibited transaction claims is that "the Plan offers Invesco-affiliated funds." (Defs.' Br. MTD at 23). Defendants mischaracterize Plaintiff's prohibited transaction claims. Plaintiffs do not allege that the selection of Invesco-affiliated funds was in and of itself the prohibited transaction.  Rather, Plaintiff alleges that the "transactions were for more than reasonable compensation, not selected solely in the interests of Plan participants and/or were on terms less favorable than could have been procured if the transactions were the product of arm's-length negotiations with outside investors." (Am. Compl. ¶ 134).[9] To trigger the three-year statute of limitations, Defendants must show more than Plaintiff's knowledge of the transactions themselves, as "plaintiff must still have actual knowledge of the facts necessary to constitute a claim and those facts 'could include necessary opinions of experts, knowledge of a

---

[9] However, as the Court will hold in the following section, Plaintiff's decision to plead his prohibited transaction claim in such a sweeping way without sufficient factual allegations renders the claims subject to dismissal.

transaction's harmful consequences, or even actual harm.'" *Wildman*, 237 F. Supp. 3d at 911 (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992)). "Without more, Defendants have not shown it is clear from the face of the amended complaint Plaintiffs knew of the alleged prohibited transactions or had actual knowledge of the facts necessary to constitute a claim." *Id.* at 911–12. Accordingly, the Motion to Dismiss is **DENIED** as to this ground, although in the event Plaintiff amends his complaint to state a plausible prohibited transaction claim, Defendants remain free to renew this argument at the summary judgment stage or at trial.

## 2. Reasonable Compensation Exemption and PTE 77–3

As noted above, Plaintiff has alleged two prohibited transaction counts, Counts III and IV. Plaintiff alleges that selecting affiliated funds constituted prohibited transactions in that the transactions were between fiduciaries and the plan or the plan and parties in interest and that the "transactions were for more than reasonable compensation, not selected solely in the interests of Plan participants and/or were on terms less favorable than could have been procured if the transactions were the product of arm's-length negotiations with outside investors." (Am. Compl. ¶ 134; *see also id.* ¶ 145).

Defendants move to dismiss Counts III and IV of the Complaint under the reasonable-compensation exemption of ERISA Section 408, 29 U.S.C. § 1108(b)(2), (c)(2). Defendants also note in their opening brief that "[Department of Labor] regulations implementing ERISA expressly allow mutual fund advisors

and their affiliates to invest in affiliated mutual funds." (Defs.' Br. MTD at 19 (citing Dep't of Labor PTE 77–3, 42 Fed. Reg. 18734 (Apr. 8, 1977))).

"[T]he statutory exemptions established by § 1108 are defenses which must be proven by the defendant." *Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314, 1336 (N.D. Ga. 2017) (quoting *Braden*, 588 F.3d at 601) (internal quotations omitted). Adjudication of the reasonable-compensation exemption is ordinarily not appropriate on a motion to dismiss as "the section 408 exemptions are affirmative defenses for pleading purposes, and so the plaintiff has no duty to negate any or all of them." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016).

Defendants argue that dismissal is appropriate because the fees which were charged by the Invesco-affiliated funds "are within ranges found by other courts to be reasonable as a matter of law." (Defs.' Br. MTD at 22.) Defendants rely on a handful of cases for this proposition, several of which were decided on summary judgment or upon facts submitted to the court. *Tibble v. Edison Int'l*, 729 F.3d 1110, 1118 (9th Cir. 2013), vacated, 135 S. Ct. 1823 (2015); *Brotherston v. Putnam Investments, LLC*, No. CV 15-13825-WGY, 2017 WL 1196648, at *2 (D. Mass. Mar. 30, 2017) (facts submitted to the court), aff'd in part, vacated in part, remanded, 907 F.3d 17 (1st Cir. 2018); *but see Loomis v. Exelon Corp.*, No. 06 CV 4900, 2009 WL 4667092, at *3 (N.D. Ill. Dec. 9, 2009) (discussing the fees in the context of a motion to dismiss a breach of fiduciary claim), aff'd, 658 F.3d 667 (7th Cir. 2011); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-CV-1839 (VAB), 2016 WL

7494320, at *15 (D. Conn. Dec. 30, 2016), aff'd, 718 F. App'x 3 (2d Cir. 2017) (same).

The Court is reluctant to reach the issue of reasonableness as a matter of law on a motion to dismiss, and it agrees with the approach taken in *Pledger*, that "those arguments are more appropriate for consideration on motions for summary judgment." *Pledger*, 240 F. Supp. 3d at 1335. The Court is also mindful that Defendants bear the burden of raising affirmative defenses, and has reviewed the Eighth Circuit's decision in *Braden*, which held that an ERISA plaintiff need not negate a reasonable compensation affirmative defense in the complaint. 588 F.3d at 602.

However, several features particular to the case at hand distinguish this case from *Braden*. In *Braden*, the Court based its decision in part on the fact that the Plaintiff "could not possibly show at this stage in the litigation that the revenue sharing payments were unreasonable in proportion to the services rendered because the trust agreement between Wal-Mart and Merrill Lynch required the amounts of the payments to be kept secret." 588 F.3d at 602. The Court noted that "[i]t would be perverse to require plaintiffs bringing prohibited transaction claims to plead facts that remain in the sole control of the parties who stand accused of wrongdoing." *Id.* (citing *See Lowen,* 829 F.2d at 1215).

In this case, Plaintiff has not alleged he does not have access to the compensation paid to parties in interest. In fact, he has pled the expense ratios of two funds, EMET and GTDFX. However, he failed to plead the terms or expense

ratios for every other fund, instead alleging generally that "the transactions were for more than reasonable compensation, not selected solely in the interests of Plan participants and/or were on terms less favorable than could have been procured if the transactions were the product of arm's-length negotiations with outside investors." (Am. Compl. ¶¶ 134, 145.) By boldly alleging such a sweeping scheme by Defendants, but failing to allege such basic information as the amount of compensation paid to Investment Manager Defendants, or terms as compared to other funds (and where there is no allegation that such information is not available to Plaintiff), Plaintiff may have avoided dismissal of his prohibited transfer claims on statute of limitations grounds, but has rendered his prohibited transaction claims subject to dismissal for failure to state a claim under *Twombly* and *Iqbal* with sufficient particularity. *Iqbal*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. at 570).

Furthermore, the Court is concerned that some or all of these claims may be barred by the Secretary of Labor's Prohibited Transaction Exemption (PTE) 77–3, as was the case in *Patterson v. Capital Grp. Companies, Inc.*, No. CV174399DSFPJWX, 2018 WL 748104, at *3 (C.D. Cal. Jan. 23, 2018). In *Patterson*, the Court was faced with a prohibited transaction claim arising from allegedly self-interested transactions by funds affiliated with the defendant employer. The court noted in that the Secretary of Labor's Prohibited Transaction Exemption, "PTE 77–3 requires only that the fees charged be the company's standard fees." *Id.* at *6 (citing *Mehling v. New York Life Ins. Co.*, 163 F. Supp. 2d

502, 510 (E.D. Pa. 2001); *Shirk v. Fifth Third Bancorp*, No. 05-CV-049, 2008 WL 4449024, at *14–15 (S.D. Ohio Sept. 26, 2008) ("PTE 77–3 provides that employers . . . who offer their own proprietary funds to their employees in a 401(k) Plan are only permitted to charge the Plan a single investment management fee.").

Although Plaintiff has "pled in [his] Amended Complaint that the exceptions in § 408(b)(8) and PTE 77–3 do not apply in this action," *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 SRN/JSM, 2012 WL 5873825, at *17 (D. Minn. Nov. 20, 2012), he has done so in a conclusory way. (Am. Compl. ¶¶ 134, 145(d).)[10] Plaintiff does not plead what the fees or expense ratios are, how they compare to similar funds, or whether Investment Manager Defendants charge the Plan different fees from their standard fees.  Plaintiff does not allege that this information is not available to him. Accordingly, the Motion to Dismiss is **GRANTED**, but Plaintiff's request for leave to amend (Pl.'s Resp. Br. at 25 n.19) is also **GRANTED** as to these counts as well.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. 67.]. Plaintiff is also **GRANTED**

---

[10] *see Leber v. Citigroup, Inc.,* No. 07 CIV. 9329 (SHS), 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) ("Plaintiffs' contention that the exemptions are affirmative defenses on which defendants carry the burden of proof misstates their own burden': while establishing that a challenged transaction meets each of the four conditions necessary for PTE 77–3 to apply might be a defendant's burden if in dispute, a complaint must allege a course of conduct actionable under the relevant statute.").

leave to file an amended complaint. Plaintiff is **DIRECTED** to file an amended complaint within 20 days of the date of entry of this Order. Defendants are **DIRECTED** to file a responsive motion or pleading in the time and manner set forth in Federal Rule of Civil Procedure 15(a)(3).

      **IT IS SO ORDERED** this 25th day of September, 2019.

**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**