UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| DIEGO CERVANTES, Individually and on Behalf of the Invesco 401(k) Plan and All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>INVESCO HOLDING COMPANY (US), INC., et al.,<br><br>                Defendants. | Civil Action No. 1:18-cv-02551-AT<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................1

II.  SETTLEMENT BACKGROUND AND TERMS ........................................3

    A.  The Proposed Class ..................................................................4

    B.  Monetary Relief.......................................................................4

    C.  Release of Claims ....................................................................5

III.  THE NOTICE SATISFIED RULE 23 AND DUE PROCESS .......................6

IV.  REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY ..............8

V.  THE PROPOSED SETTLEMENT WARRANTS FINAL
    APPROVAL ........................................................................................10

    A.  The Settlement Is Procedurally Fair:  Plaintiff and Class
    Counsel Have Adequately Represented the Class and Engaged
    in Arm's-Length Negotiations with Defendants ..................................11

    B.  The Settlement Is Substantively Fair: The Relief Provided to
    the Class Is Adequate and Equitable ....................................................13

        1.  The Costs, Risks, and Delay of Trial and Appeal Support
        Approval of the Settlement .......................................................14

        2.  The Proposed Method of Distributing Relief to the Class
        Will Be Highly Effective and Equitable ...................................17

        3.  The Terms of the Attorneys' Fee Award Are Fair,
        Reasonable, and in Line with Other Cases ..............................18

    C.  The Settlement Is Fair, Adequate and Reasonable Under the
    *Bennett* Factors .....................................................................................19

- i -

**Page**

1. The Potential Obstacles to Success at Trial Support Approval of the Settlement .......................................................19

2. The Settlement Amount Is Within the Range of Reasonableness .........................................................................21

3. The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement .......22

4. The Stage of Proceedings Supports Approval of the Settlement...................................................................................22

VI.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE...................................................................................23

VII.   THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE CLASS ...................................................................................24

VIII.   CONCLUSION..............................................................................24

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beavers v. Am. Cast Iron Pipe Co.*,
164 F. Supp. 2d 1290 (N.D. Ala. 2001)............................................................20

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988),
*aff'd*, 899 F.2d 21 (11th Cir. 1990).............................................................21, 22

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ......................................................11, 14, 19, 21

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ............................................................................15

*Brotherston v. Putnam Invs., LLC*,
No. 15-13825-WGY, 2016 WL 1397427
(D. Mass. Apr. 7, 2016) ....................................................................................15

*Cifuentes v. Regions Bank*,
No. 11 CV 23455 FAM, 2014 U.S. Dist. LEXIS 37458
(S.D. Fla. Mar. 20, 2014)...................................................................................20

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)............................................................................................6

*Garst v. Franklin Life Ins. Co.*,
No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666
(N.D. Ala. June 28, 1999)............................................................................20, 21

*Greenspun v. Bogan*,
492 F.2d 375 (1st Cir. 1974).............................................................................6

*Hill v. State Street Corp.*,
No. 09-12146-GAO, 2015 WL 127728
(D. Mass. Jan. 8, 2015) ...............................................................................6, 8

*In re Cabletron Sys., Inc. Sec. Litig.*,
239 F.R.D. 30 (D.N.H. 2006) ............................................................................23

4847-7991-5456.v1

**Page**

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ............................................................................23

*In re CP Ships Ltd. Sec. Litig.*,
  578 F.3d 1306 (11th Cir. 2009) ........................................................................11

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ...............................................................19

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .......................................................................23

*In re StockerYale, Inc. Sec. Litig.*,
  No. 1:05CV00177-SM, 2007 WL 4589772
  (D.N.H. Dec. 18, 2007)......................................................................................15

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) .............................................................21

*Kelly v. Johns Hopkins Univ.*,
  No. 1:16-cv-2835-GLR, 2020 WL 434473
  (D. Md. Jan. 28, 2020) .......................................................................................19

*LaLonde v. Textron, Inc.*,
  369 F.3d 1 (1st Cir. 2004)..................................................................................14

*Medoff v. CVS Caremark Corp.*,
  No. 09-CV-554-JNL, 2016 WL 632238
  (D.R.I. Feb. 17, 2016)........................................................................................14

*Mehling v. New York Life Ins. Co.*,
  248 F.R.D. 455 (E.D. Pa. 2008).........................................................................13

*Meiners v. Wells Fargo & Co.*,
  No. 16- 3981(DSD/FLN), 2017 WL 2303968
  (D. Minn. May 25, 2017),
  *aff'd*, 898 F.3d 820 (8th Cir. 2018)...................................................................15

- iv -

**Page**

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs.*
    *Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*,
    712 F.3d 705 (2d Cir. 2013) ...................................................................15

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) .....................................................22

*Schwartz v. TXU Corp.*,
    No. 3:02-CV-2243-K, 2005 WL 3148350
    (N.D. Tex. Nov. 8, 2005) ......................................................................23

*Stevens v. SEI Invs. Co.*,
    No. 18-4205, 2020 WL 996418
    (E.D. Pa. Feb. 28, 2020) .......................................................................19

*Strube v. Am. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) .........................................................20

*Wildman v. Am. Century*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019) .................................................16

## STATUTES, RULES AND REGULATIONS

29 U.S.C.
    §1000...................................................................................*passim*
    §1104...........................................................................................14
    §1106...........................................................................................14

**Page**

Federal Rules of Civil Procedure

Rule 23 ...........................................................................................................3

Rule 23(a) ......................................................................................................24

Rule 23(b)(1) .................................................................................................24

Rule 23(b)(3) ...................................................................................................6

Rule 23(c)(2)(A) ..............................................................................................6

Rule 23(c)(2)(B) ......................................................................................6, 7, 8

Rule 23(e) ......................................................................................................10

Rule 23(e)(1) ....................................................................................................6

Rule 23(e)(1)(B) ...........................................................................................6, 7

Rule 23(e)(2) .......................................................................................1, 10, 11

Rule 23(e)(2)(A) .....................................................................................11, 13

Rule 23(e)(2)(B) .....................................................................................11, 13

Rule 23(e)(2)(C) ...............................................................................11, 13, 14

Rule 23(e)(2)(C)(i) .....................................................................14, 16, 19, 22

Rule 23(e)(2)(C)(iii) ......................................................................................18

Rule 23(e)(2)(D) ...............................................................................11, 13, 14

Rule 23(e)(3) .................................................................................................10

4847-7991-5456.v1

On behalf of himself and 8,087 current and former participants in the Invesco Ltd.'s 401(k) Plan (the "Plan") from May 25, 2012 to the date of the Final Judgment (the "Class"), Plaintiff Diego Cervantes ("Plaintiff") respectfully submits this memorandum in support of his motion for final approval of a $3,470,000 class action settlement (the "Settlement") and approval of the Plan of Allocation.

## I.    INTRODUCTION

Plaintiff alleged that Defendants[1] breached their fiduciary duties and engaged in prohibited transactions in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").  After a month of arm's-length negotiations, the parties agreed to settle the case for $3,470,000.

On April 3, 2020, the Court granted preliminary approval of the Settlement, having found that "the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23(e)(2)."  Order Preliminarily Approving Settlement and Providing for Notice ("Prelim. Approval Order"), ECF No. 94, ¶1.  The Court also preliminarily found that the Settlement should be approved as "the result of serious, extensive arm's-length and non-collusive negotiations" and that it falls

---

[1]   Defendants are Invesco Holding Company (US), Inc., Invesco LTD., Invesco National Trust Company, Invesco Advisers, Inc., Invesco Benefits Plan Committee, Suzanne Christensen, John Coleman, Washington Dender, Peter Gallagher, David Genova, Douglas Sharp, Ben Utt, Gary Wendler, Kevin M. Carome, Loren M. Starr, and John Does 1-20 (collectively, "Defendants").

- 1 -

"within a range of reasonableness warranting final approval." *Id.*, ¶5. In addition to preliminarily approving the Settlement, the Court: (i) conditionally certified the proposed Class; (ii) appointed Analytics Consulting LLC as Settlement Administrator; and (iii) approved the form and content of the Notice to be provided to the Class. *Id.*, ¶¶2, 4, 5, 7, 8.

After having been fully informed of its terms by the Court-approved Notice, to date not a single Class Member has objected to the Settlement. And the Independent Fiduciary retained to review the Settlement[2] issued a report on June 25, 2020, finding the Settlement fair and reasonable, and agreeing to the Settlement on behalf of the Plan.

Under the terms of the Settlement, Defendants have caused $3,470,000 to be deposited into the interest-bearing Escrow Account ("Settlement Fund"), which amount, minus certain attorneys' fees, litigation expenses, the Plaintiff Incentive Award, and administration costs, will be distributed on a *pro rata* basis among Class Members who are, or were, participants in the Plan, pursuant to the proposed Plan of Allocation. The Plan of Allocation was developed in conjunction with a well-regarded expert and is designed to fairly and equitably distribute the proceeds of the

---

[2]   Department of Labor Prohibited Transaction Exemption ("PTE") 2003-39, requires that an independent fiduciary review the settlement where, as here, the plan is releasing claims, and to agree to the settlement only if the independent fiduciary determines the settlement "would have been agreed to by unrelated parties under similar circumstances." 68 Fed. Reg. 75632, at *75635 (Dec. 31, 2003).

Settlement to Class Members, taking into account Plaintiff's allegations and the losses suffered while they were participants in the Plan.  Upon final approval, the Settlement Administrator anticipates effectuating settlement payments to Class Members pursuant to the Settlement Agreement's Plan of Allocation.

For these reasons and those detailed below, Plaintiff respectfully submits that both the Settlement and Plan of Allocation are fair, reasonable and adequate and should be approved.  Accordingly, Plaintiff requests that the Court enter an order granting final approval of the Settlement, approving the Plan of Allocation, and certifying the Rule 23 class.

## II.    SETTLEMENT BACKGROUND AND TERMS

The Settlement is the product of extensive negotiations conducted in good faith at arm's length between experienced attorneys familiar with the legal and factual issues of this case.  The parties negotiated the Settlement over a four-week period in which they exchanged multiple settlement proposals before agreeing to resolve the case for $3,470,000.  The parties executed the Settlement Agreement on March 6, 2020.[3]  *Id.*, ¶¶6-7.

---

[3]   The parties executed the operative Amended Settlement Agreement on April 1, 2020.  ECF No. 93-1.

## A.     The Proposed Class

The Settlement Agreement calls for certification for settlement purposes of the

following Class:

> All participants in the Invesco 401(k) Plan from March 25, 2012 to the
> date of the Final Judgment and Order of Dismissal with Prejudice (the
> "Class Period").  Excluded from the Class are Defendants and members
> of the Invesco Benefits Plan Committee.

*See* Amended Settlement Agreement, ECF No. 93-1, ¶1.8.

## B.     Monetary Relief

Under the Settlement, Defendants have deposited $3,470,000 into the Escrow

Account.  The Settlement Administrator will distribute the Net Settlement Fund[4] to

Class Members according to a Plan of Allocation as described in ¶5.1 of the Amended

Settlement Agreement and in the Notice at 3-4.  Under the Plan of Allocation, the

Settlement Administrator shall determine each Class Member's total settlement

payment by calculating each Class Member's proportionate share of the Net

Settlement Fund (*id.*, ¶5.1(b)), which will be allocated among eligible Class Members

in proportion to their Average Settlement Allocation Score.  Consistent with Class

Counsel's assessment of the relative strength of the claims that were asserted on

behalf of Class Members, and the loss calculations of Plaintiff's damages consultant,

---

[4]    The Net Settlement Fund is the Settlement Fund less Notice and Administration
Costs, the attorneys' fees and expenses, and any Plaintiff Incentive Award awarded by
the Court and any other Court-approved deductions.  Amended Settlement Agreement,
¶1.31.

- 4 -

Class Members' balances in the Proprietary Funds will be weighted four times more heavily than balances in the Non-Proprietary Funds.  *Id.*, ¶5.1(a).

## C.    Release of Claims

In exchange for the relief provided by the Settlement, the members of the Class and the Plan itself will release Defendants and affiliated persons and entities from all claims:

> (a)    that were asserted in the Action or could have been asserted in the Action, or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Amended Complaint, including but not limited to those that arise out of, relate to, are based on, or have any connection with: (1) the selection, retention, and monitoring of the Plan's investment options and service providers, (2) the performance, fees, and other characteristics of the Plan's investment options and their specific share classes, (3) the Plan's fees and expenses, including without limitation fees and expenses associated with the provision of recordkeeping and subadvisory services, (4) the nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries, and (5) the approval by the Independent Fiduciary of the Settlement Agreement;

> (b) that would be barred by *res judicata* based on the Court's entry of the Final Judgment and Order of Dismissal with Prejudice;

> (c) that relate to the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

> (d) that relate to the approval by the Independent Fiduciary of the Settlement Agreement.

*Id.*, ¶1.38.

4847-7991-5456.v1

## III.   THE NOTICE SATISFIED RULE 23 AND DUE PROCESS

Since the Court conditionally certified the Class under Federal Rule of Civil Procedure ("Rule") 23(b)(1), Plaintiff was required to provide "appropriate notice" to Class Members under Rule 23(c)(2)(A).   Here, the Notice also met the stricter requirement of Rule 23(c)(2)(B) (applicable only to Rule 23(b)(3) classes) to be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).   The Notice further satisfied Rule 23(e)(1), which requires that notice be directed "in a reasonable manner to all class members who would be bound."  Fed. R. Civ. P. 23(e)(1)(B).

Overall, the Notice's content and manner of dissemination "'fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them.'" *Hill v. State Street Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015) (quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974)).[5]  The Notice program was carried out by Analytics, a nationally recognized claims' administration firm with strong experience with ERISA class actions, under the supervision of Class Counsel.  The Notice included: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of

---

[5]   Citations are omitted and emphasis is added throughout unless otherwise noted.

the Class; (iii) the Class' claims and the amount of the Settlement; (iv) that a Class Member may enter an appearance through an attorney; (v) a description of the Plan of Allocation; (vi) an explanation of the reasons why the parties are proposing the Settlement; (vii) a statement indicating the attorneys' fees and expenses that will be sought; (viii) a description of Class Members' right to object to the Settlement, the Plan of Allocation, and the requested attorneys' fees and expenses; and (ix) notice of the binding effect of a judgment on Class Members. *See* accompanying Declaration of Christopher D. Amundson of Analytics Consulting LLC Regarding Implementation of Notice Program ("Amundson Decl."), Ex. A; Fed. R. Civ. P. 23(e)(1)(B); *cf.* Fed. R. Civ. P. 23(c)(2)(B).

In accordance with the Court's Preliminary Approval Order, the Settlement Administrator mailed copies of the Notice by first-class mail to Class Members. Amundson Decl., ¶¶3-8. Analytics re-mailed any Notices that the United States Postal Service returned with updated addresses. *Id.*, ¶9. When Notices were returned undeliverable, Analytics located new addresses through a third-party commercial data source and re-mailed the Notices. *Id.* As a result of these efforts, Analytics estimates that Notice was successfully delivered to over 99% of the Class. *Id.*

In addition, copies of the Notice, Former Participant Rollover Form, Settlement Agreement, and other relevant case documents and information were made available on

- 7 -

the Settlement website, InvescoERISASettlement.com.  *See id.*, ¶¶14-17.  Analytics also created and maintained a toll-free telephone support line (1-888-970-3711) as a resource for Class Members seeking information about the Settlement.  *Id.*, ¶¶10-13.

In sum, the efforts of Class Counsel and Analytics provided the Class with "the best notice . . . practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and "'fairly apprise[d]'" Class Members about the Settlement.  *Hill*, 2015 WL 127728, at *15.

## IV.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to PTE 2003-39, the Settlement was submitted to an Independent Fiduciary, Fiduciary Counselors, Inc., for review.  *See* accompanying Declaration of Evan J. Kaufman in Support of: (A) Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (B) Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Incentive Award ("Kaufman Decl."), ¶79.  In the course of its review, Fiduciary Counselors: (i) reviewed Court documents and other information and documents in the Action; (ii) interviewed counsel for the parties; (iii) evaluated the strengths and weaknesses of the parties' legal and factual arguments in the Action; (iv) reviewed and analyzed the terms of the Settlement, including, but not limited to, the Settlement consideration and the scope of the Settlement release; (v) reviewed the Plan of Allocation proposed by the parties;

and (vi) reviewed Class Counsel's request for attorneys' fees and expenses. *See* ECF No. 97-1 at 2.

Based on its review, Fiduciary Counselors found, *inter alia*, that: (i) there is a genuine controversy concerning the Plan; (ii) the terms of the Settlement, including the scope of the release of claims, the amount of cash received by the Plan, the non-monetary consideration, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone; (iii) the terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances; (iv) the transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest; (v) the transaction is not described in Prohibited Transaction Exemption 76-1; (vi) all terms of the Settlement are specifically described in the written settlement agreement; and (vii) the Settlement includes non-monetary consideration that is in the interest of the Plan's participants and beneficiaries. *See* ECF No. 97-1 at 1, 8.

Furthermore, Fiduciary Counselors stated that the Settlement Amount of $3,470,000 is a fair and reasonable recovery considering the results in numerous similar cases in the last several years, the defenses that Defendants would have

- 9 -

asserted, the risks involved in proceeding to trial, and the possibility of reversal on appeal of any favorable judgment. *Id.* at 8.

## V.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval. The Rule further directs that the settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Rule 23(e)(2) articulates specific factors for courts to consider when evaluating a settlement for final approval. Specifically, courts are called upon to assess whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

- 10 -

Fed. R. Civ. P. 23(e)(2).  Subsections 23(e)(2)(A)-(B) of the revised Rule focus on the "procedural" fairness of the settlement, while subsections 23(e)(2)(C)-(D) concern the settlement's "substantive" fairness.  Advisory Committee Notes to 2018 Amendment to Rule 23(e)(2).

In addition, the Eleventh Circuit has held that in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the following factors, several of which overlap with Rule 23(e)(2):

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1318 (11th Cir. 2009) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

Here, the Settlement plainly meets Rule 23(e)(2)'s procedural and substantive requirements as well as the Eleventh Circuit's *Bennett* factors.

### A. The Settlement Is Procedurally Fair:  Plaintiff and Class Counsel Have Adequately Represented the Class and Engaged in Arm's-Length Negotiations with Defendants

Plaintiff and his counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Action on his behalf.  Among other things, Plaintiff investigated the relevant factual events, analyzed the disclosure

4847-7991-5456.v1

documents provided to Plan participants, the Plan's Summary Plan Description, Department of Labor filings filed by the Plan, U.S. Securities and Exchange Commission filings filed by Invesco, and the fees and performance of the investment options offered to Plan participants. Kaufman Decl., ¶20. Furthermore, Plaintiff's counsel researched the legal issues underlying Plaintiff's claims, drafted a detailed complaint and amended complaint, opposed Defendants' motion to dismiss, continued investigating and drafting a second amended complaint in order to cure deficiencies highlighted in the Court's opinion granting Defendants' motion to dismiss, and participated in extensive settlement negotiations with Defendants' Counsel. *Id.*, ¶¶21-42.

In addition, the parties reached a settlement as the result of good faith, arm's-length negotiations by experienced counsel. Prior to the anticipated filing of the second amended complaint, the parties engaged in multiple arm's-length settlement negotiations over the course of over four weeks. *Id.*, ¶39. Plaintiff's counsel continued working on the second amended complaint as they were negotiating with Defendants. *Id.*

As detailed in the Kaufman Declaration (¶¶71-72), Class Counsel has substantial experience in complex class actions, including ERISA class actions involving 401(k) plans. Class Counsel has served as lead or co-lead counsel in

- 12 -

numerous class actions and is currently counsel in three ERISA class actions pending in various federal courts throughout the country. *Id.*, ¶72.

In sum, Class Counsel brought its extensive experience to bear on the prosecution and settlement of this case. Counsel has zealously represented the Class and achieved a meaningful settlement after extensive arm's-length negotiations with Defendants' Counsel. Moreover, Plaintiff has assisted Class Counsel throughout this process and adequately represented the Class. Accordingly, the Settlement satisfies the "procedural" factors outlined in Rule 23(e)(2)(A)-(B).

### B. The Settlement Is Substantively Fair: The Relief Provided to the Class Is Adequate and Equitable

"The relief that the settlement is expected to provide to class members is a central concern" of the analysis under Rules 23(e)(2)(C)-(D). Notes of Advisory Committee on 2018 Amendment to Rule 23(e)(2)(C)-(D).

The Settlement Amount represents a significant portion of the total damages that Plaintiff has reasonably calculated were caused by Defendants' violations of ERISA. Plaintiff retained a consultant, Hugh Cohen, Ph.D, of Portfolio Monitoring, LLC, who calculated the likely total damages at approximately $4.4 million. Kaufman Decl., ¶¶40-42. Accordingly, the Settlement Amount ($3.47 million) represents approximately 78% of the total damages, which is well above the range found reasonable in other class action settlements. *See Mehling v. New York Life Ins.*

- 13 -

*Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery in ERISA class action approved); *see also Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (noting that 5.33% is "well above the median percentage of settlement recoveries in comparable securities class action cases").

Furthermore, the Settlement provides a substantial non-monetary benefit to the Plan. Under the terms of the Settlement, Invesco has agreed to modify the self-directed Schwab Account through the Plan to enable Plan participants to purchase shares of non-proprietary ETFs in addition to the proprietary ETFs that were made available to participants during the Class Period.

In addition to providing substantial value to Class Members, the Settlement meets the other indicia of "substantive" fairness set forth in Rule 23(e)(2)(C)-(D).

### 1. The Costs, Risks, and Delay of Trial and Appeal Support Approval of the Settlement

The costs, risks and delay associated with taking this case to trial – and, inevitably, appeals – weigh in favor of approval. *See* Rule 23(e)(2)(C)(i) and first and fourth *Bennett* factors. ERISA jurisprudence is an "important and complex area of law." *LaLonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004). Plaintiff's ERISA claims are based on breaches of the duties of prudence and loyalty under 29 U.S.C. §1104, as well as prohibited transactions under 29 U.S.C. §1106. Both claims are

- 14 -

"factually complex." *Brotherston v. Putnam Invs., LLC*, No. 15-13825-WGY, 2016 WL 1397427, at *1 (D. Mass. Apr. 7, 2016).

For example, to prevail on the breach of prudence claims, Plaintiff would have to prove that Defendants' process for monitoring Plan options was "tainted by failure of effort, competence, or loyalty." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Plaintiff would have to show that the disputed investments underperformed relative to comparable benchmarks, that Invesco failed to remove the disputed investments in a timely fashion, and, as a result, that the Plan and its participants suffered investment losses. *Meiners v. Wells Fargo & Co.*, No. 16-3981(DSD/FLN), 2017 WL 2303968, at *4 (D. Minn. May 25, 2017), *aff'd*, 898 F.3d 820 (8th Cir. 2018). Plaintiff would also have to prove through, *inter alia*, expert testimony, that the alleged comparable investments were in fact comparable to the disputed investments and that the underperformance analysis was not based on the benefit of pure hindsight. *Id.*; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705 (2d Cir. 2013). If Plaintiff was unsuccessful on any of these points, any recovery could be reduced or lost altogether. *Cf. In re StockerYale, Inc. Sec. Litig.*, No. 1:05CV00177-SM, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007) (fact that "various defenses could result in no liability and zero recovery for the class" favors approval of the settlement).

- 15 -

Furthermore, the Court has already dismissed the amended complaint in connection with Defendants' motion to dismiss. While the Court provided Plaintiff with leave to amend, there was a substantial risk that the second amended complaint would not have cured the deficiencies identified by the Court. Even if Plaintiff's ERISA claims survived the pleading stage, substantial discovery remains to be taken and significant (and expensive) expert discovery would be required for both sides. Ultimately, any judgment would likely present significant legal questions, which the losing parties would likely appeal, adding further cost, risk and delay to these proceedings.

The risks of proceeding on Plaintiff's claims is illustrated by *Wildman v. Am. Century*, 362 F. Supp. 3d 685 (W.D. Mo. 2019), a recent case that challenged the inclusion of proprietary funds in a 401(k) plan. After a bench trial, the court found that despite the allegations of poorly performing proprietary funds, the plaintiffs failed to prove by a preponderance of the evidence that defendants breached their fiduciary duties to the plan. *Id.* at 711-12.

In sum, the $3,470,000 all cash recovery now, viewed in the context of the "costs, risks, and delay of trial and appeal" strongly favor final approval of the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(i).

- 16 -

### 2.   The Proposed Method of Distributing Relief to the Class Will Be Highly Effective and Equitable

The Plan of Allocation sets forth an effective and equitable method of distributing the Net Settlement Fund to the Class.  These factors also support final approval of the Settlement.  *See* Fed. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D).  As discussed further in §VI below, the parties have developed neutral methods to promptly deliver the Settlement proceeds to Class Members.  Under the Plan of Allocation, all eligible Class Members will receive a proportionate share of the Net Settlement Fund based on their investment selections and their average account balance.  The Settlement Administrator will determine an "Average Settlement Allocation Score" for each Class Member.  Settlement Agreement, ¶5.1(a)(b).  That Score will be the Class Member's aggregate year-end Plan account balance during the Class Period, measured in points, such that each dollar invested in Proprietary Funds equals four (4) points and each dollar invested in Non-Proprietary Funds equals one (1) point.

This formula operates to provide relief to all Class Members in a manner that is consistent with the loss calculations of Plaintiff's damages consultant, and with Class Counsel's assessment of the relative strength of the claims that were asserted in the case.  In its review of the Plan of Allocation, the Independent Fiduciary concluded:

> We find the Plan of Allocation to be reasonable, including the use of quarterly account balances, the relative weighting of investments in Proprietary Funds and in Non- Proprietary Funds, and the provisions for

> payments to current participants, former participants, beneficiaries and alternate payees. They are cost-effective, put the allocations of current participants in their Plan accounts, and allow others to elect a rollover or receive a direct cash payment.

*See* ECF No. 97-1 at 6.  A similar plan of allocation was approved by the court in *Moreno, et al. v. Deutsche Bank Am. Holding Corp., et al.*, No. 1:15-cv-09936, Settlement Agreement, ECF No. 322-1 at 29-32 (S.D.N.Y. Aug. 14, 2018) (proprietary funds weighted three times more heavily than balances in the non-proprietary funds).

Notably, after having been informed of its terms by virtue of the Court-approved Notice, to date not a single Class Member has filed an objection to the Settlement or Plan of Allocation.

### 3. The Terms of the Attorneys' Fee Award Are Fair, Reasonable, and in Line with Other Cases

As detailed in the accompanying Memorandum of Law in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Incentive Award, the terms of the requested attorneys' fees are fair, reasonable, and in line with awards in similar cases.  This also weighs in favor of approval of the Settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Notice states that Class Counsel will apply to the Court for an award of up to 33% of the Settlement Amount in attorneys' fees, plus their litigation expenses.  The proposed attorneys' fee award compares favorably to similar

ERISA cases, in which courts routinely award one-third of the settlement amount. *E.g.*, *Stevens v. SEI Invs. Co.*, No. 18-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020) (awarding one-third of $6.8 million recovery); *Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-2835-GLR, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020) (awarding one-third of $4,666,667 recovery, noting that "[in] similar ERISA excessive fee cases, and in particular those brought by Class Counsel, district courts have consistently recognized that a one-third fee is the market rate"); *Price v. Eaton Vance Corporation, et al*, No. 1:18CV12098, Order, ECF No. 63 (D. Mass. Nov. 25, 2019).[6]  Finally, Fiduciary Counselors found the requested attorneys' fees and expenses to be reasonable.  ECF No. 97-1 at 6.

### C.    The Settlement Is Fair, Adequate and Reasonable Under the *Bennett* Factors

#### 1.    The Potential Obstacles to Success at Trial Support Approval of the Settlement

The first *Bennett* factor, "the likelihood of success at trial," 737 F.2d at 986, overlaps with Rule 23(e)(2)(C)(i), discussed above in §V.B.1.  "In assessing plaintiffs' likelihood of success at trial for purposes of determining whether the Settlement is

---

[6]   With respect to the timing of payment, the Amended Settlement Agreement (¶7.1) provides that such fees and expenses awarded by the Court shall be paid immediately upon execution of the order awarding fees and expenses.  *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

fair, adequate and reasonable, the Court should make only a 'limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.'" *Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *62 (N.D. Ala. June 28, 1999); *accord Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005).

As discussed above, even though the Court provided Plaintiff leave to amend the complaint, there are no assurances that the revised pleading would have cured the deficiencies identified by the Court.  In its decision, the Court stated that "an ERISA plaintiff's burden is not simple," and that with the exception of one fund, the Amended Complaint failed to plausibly plead underperformance.  ECF No. 77 at 12-13.  Therefore, there were substantial risks that Plaintiff would have been unable to convince the Court that Invesco-affiliated investments offered through the Plan were imprudent and the result of self-dealing.

"[T]here was great risk facing Plaintiff[] and the Class that could have resulted in Plaintiff[] and the Class recovering far less than the common fund created *vis-a-vis* the Settlement or, far worse, nothing at all." *Cifuentes v. Regions Bank*, No. 11 CV 23455 FAM, 2014 U.S. Dist. LEXIS 37458, at *12 (S.D. Fla. Mar. 20, 2014); *see Beavers v. Am. Cast Iron Pipe Co.*, 164 F. Supp. 2d 1290, 1298 (N.D. Ala. 2001)

- 20 -

("there are both strengths and weaknesses in each party's position[;] [t]his uncertainty of outcome is another factor favoring approval of the settlement").

Because of the risks associated with continuing to litigate and proceeding to trial, there was a danger that Plaintiff would not have prevailed against Defendants on any of his claims and that the Class would have received nothing. Therefore, Class Counsel believes the Settlement obtained is in the best interests of the Class.

### 2. The Settlement Amount Is Within the Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64; *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) ("'the second and third considerations of the *Bennett* test are easily combined'"); *accord Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). This factor is addressed above in §V.B.

With the assistance of in-house and independent experts, Class Counsel estimates that the Class' maximum recoverable damages if successful on all issues at trial were approximately $4.4 million. *See* Kaufman Decl., ¶40. The Settlement is approximately 78% of that amount, an extremely favorable result.

- 21 -

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement

As discussed above in connection with Rule 23(e)(2)(C)(i) at §V.B.1., because further litigation against Defendants would necessarily involve the "unpredictability of a lengthy and complex . . . trial" – as well as the likelihood of appellate activity if Plaintiff was to prevail at trial – "the benefits to the class of the present settlement become all the more apparent." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

### 4. The Stage of Proceedings Supports Approval of the Settlement

The purpose of considering the stage of the proceedings is to ensure that Plaintiff had sufficient information to evaluate the case and to determine the adequacy of the Settlement against further litigation. *Behrens*, 118 F.R.D. at 544.

As discussed above, this case has been zealously investigated and litigated since before filing in May 24, 2018. Plaintiff thoroughly investigated the facts concerning the Plan and investment options available to Plan participants, the parties thoroughly briefed pleading motions, retained experts as consultants to assist with the analysis of the Plan and its investment options, and participated in protracted settlement discussions. *See* Kaufman Decl., ¶¶20-42. Accordingly, Plaintiff and Class Counsel believe that they had a sufficient understanding of the facts of the case, including its strengths and weaknesses, when negotiating the Settlement such that this factor favors approval of the Settlement.

- 22 -

## VI.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

A plan of allocation, like the settlement itself, should be approved if it is fair, reasonable, and adequate.  *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).

A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable, but the plan "'need not necessarily treat all class members equally.'"  *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005).  A reasonable plan of allocation "'may consider the relative strength and values of different categories of claims.'"  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012); *see also In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35 (D.N.H. 2006) (approving plan of allocation that accounted for "the strengths and weaknesses of the claims of the various types of class members").

Class Counsel developed the proposed Plan of Allocation in consultation with its damages consultant after evaluating the relative values of the different categories of claims.  As discussed in §V.B.2, above, under the Plan of Allocation, each Class Member's Average Settlement Allocation Score shall be weighted by eighty percent (80%) to his or her Plan account balance invested in Proprietary Funds and by twenty percent (20%) to his or her Plan account balance invested in Non-Proprietary Funds. The Plan of Allocation was approved by the Independent Fiduciary.  ECF No. 97-1 at 6.

## VII. THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE CLASS

In its Preliminary Approval Order, the Court conditionally certified the Class for settlement purposes, thereby recognizing that Plaintiff had satisfied the requirements of Rules 23(a) and 23(b)(1). Prelim. Approval Order, ECF No. 94 at 2. Since the Court's Preliminary Approval Order, nothing has changed to disturb the Court's conclusion that class treatment is appropriate, and there is good reason and just cause to finally certify the Class, for settlement purposes, under Rules 23(a) and 23(b)(1).

## VIII. CONCLUSION

Plaintiff respectfully requests that the Court enter an order granting final approval of the Settlement, approving the Plan of Allocation, and finally certifying the Class.

DATED:  July 2, 2020          Respectfully submitted,

HERMAN JONES LLP

*/s/ John C. Herman*

JOHN C. HERMAN
  (Georgia Bar No. 348370)
CARLTON R. JONES
  (Georgia Bar No. 940540)
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)
jherman@hermanjones.com
cjones@hermanjones.com

Local Counsel

- 24 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
EVAN J. KAUFMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
  (Georgia Bar No. 262062)
WILLIAM W. STONE
  (Georgia Bar No. 273907)
40 Powder Springs Street
Marietta, GA 30064
Telephone: 470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com
williams@johnsonfistel.com

Attorneys for Plaintiff

- 25 -

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I hereby certify that the foregoing document is written in 14-point Times New Roman font in accordance with Local Rule 5.1.

By: /s/ *John C. Herman*
John C. Herman
 (Ga. Bar No. 348370)
HERMAN JONES LLP
jherman@hermanjones.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2020, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

By:   s/ John C. Herman
      JOHN C. HERMAN
      (Ga. Bar No. 348370)
      HERMAN JONES LLP
      jherman@hermanjones.com